## STATE OF CONNECTICUT *v.* JOSEPH CHIMENTI
### (AC 28535)

Flynn, C. J., and McLachlan and Pellegrino, Js.

Argued January 22—officially released June 23, 2009

*Richard E. Condon, Jr.*, senior assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary W. Nicholson*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Joseph Chimenti, appeals from the judgment of conviction, rendered after

a trial to the court, of reckless assault in the second degree in violation of General Statutes § 53a-60 (a) (3).[1] On appeal, the defendant claims that (1) the state presented insufficient evidence to prove his guilt beyond a reasonable doubt and (2) his fifth amendment right against double jeopardy was violated when he was acquitted of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and subsequently convicted of the lesser included offense of reckless assault in the second degree. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The defendant was charged in the first count of a two count substitute information with intentional assault in the first degree in violation of § 53a-59 (a) (1) and in the second count with reckless assault in the first degree in violation of

[1] The defendant was charged by substitute information with intentional assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and, in the alternative, reckless assault in the first degree in violation of General Statutes § 53a-59 (a) (3). Section 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

The trial court also considered, at various stages of the proceedings, lesser included offenses of assault in the second degree under General Statutes § 53a-60 (a) (3) and assault in the third degree under General Statutes § 53a-61 (a) (2) and (3).

General Statutes § 53a-60 (a) provides in relevant part: "(a) A person is guilty of assault in the second degree when . . . (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when . . . (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

§ 53a-59 (a) (3). The case was tried to the court over three days in September, 2006. On September 11, 2006, the final day of trial, the defendant requested that the court consider the lesser included offense of assault in the third degree in violation of General Statutes § 53a-61 (a) (3). The state consequently requested that the court consider the lesser included offense of assault in the second degree in violation of § 53a-60 (a) (3).

On September 12, 2006, the court issued a memorandum of decision with the following findings of fact. On July 28, 2005, the defendant resided at 73 Whitney Avenue, New Haven, apartment 10. Also residing at that address were William Blakeslee and Robert Esposito. The three men shared the rent. The handle of the door to their apartment was broken, and the men often needed to use a knife to manipulate the mechanism to open the door from the inside. All three men were present in the apartment on July 28, 2005. During the course of the evening, an argument developed between the defendant and Blakeslee, the victim, concerning the victim's payment of rent to the defendant. During the argument, the defendant was holding the knife, intending to use it to open the apartment door. The argument intensified to the point that the victim struck the defendant twice. During the course of the argument, the defendant "wielded the knife in such a manner that he stabbed [the victim] in the area of the right side of [his] heart, causing a piercing wound three to five inches deep . . . ." The wound was life threatening.

The court found that the state did not prove beyond a reasonable doubt that the defendant had the intent to cause serious physical injury to the victim by means of a dangerous instrument, as alleged in the first count of the information, and rendered judgment of acquittal. The state did, however, prove beyond a reasonable doubt the charge of reckless assault in the first degree

pursuant to § 53a-59 (a) (3), as alleged in the second count of the information.

As to the second count, the court found the following facts. There is no question that the victim suffered a serious physical injury. There is no question that the injury was suffered at the hands of the defendant. The evidence discloses that the victim was stabbed in the right side of his heart, so that the defendant must have been holding the knife pointed toward the victim and at the victim's chest. The defendant is shorter than the victim, which means that the defendant was holding the knife higher than his own chest level. The defendant also held the knife with a degree of firmness that caused it to pierce three to five inches into the victim's chest, nearly the length of the blade. The court concluded that the defendant, under circumstances evincing an extreme indifference to human life, recklessly engaged in conduct that created a risk of death to the victim and thereby caused serious physical injury to him. Accordingly, the court found the defendant guilty of reckless assault in the first degree. The court also granted the defendant's motion for a judgment of acquittal as to count one of the information.

On October 4, 2006, the defendant moved for a judgment of acquittal on the second count, claiming insufficient evidence and requesting that the court vacate its finding of guilt on the charge of reckless assault in the first degree and render judgment as to any lesser included offense that was supported by the evidence. On November 28, 2006, the court rendered judgment of acquittal as to the second count of the information because it found insufficient evidence that the circumstances evinced an extreme indifference to human life and instead found the defendant guilty of reckless assault in the second degree pursuant to § 53a-60 (a) (3), a lesser included offense of the first count of intentional

assault in the first degree pursuant to § 53a-59 (a) (1). The defendant timely appealed.

I

First, we address the defendant's claim that the evidence adduced at trial was insufficient for his conviction of reckless assault in the second degree in violation of § 53a-60 (a) (3).[2] Specifically, the defendant claims that the court improperly found that he acted recklessly in causing the victim's injury.[3] We disagree.

Detective Mark Harkins of the New Haven police department testified that he responded to the defendant's apartment on July 28, 2005, to document the scene and to identify and to collect evidence. Harkins stated that he observed what appeared to be blood in the area of the doorway leading toward the couch along the wall. Harkins also testified that he observed apparent blood on the couch itself, on the rug in front of the couch and on a wool blanket next to the couch. Harkins testified that the largest concentrations of apparent blood in the apartment were along the door, along the front of the couch and on the blanket on the couch. In addition, Harkins testified that he discovered a knife approximately midway underneath the couch and that the knife had what appeared to be blood on the blade. Harkins also stated that he observed that the inside of the door leading out of the apartment was missing a

---

[2] Although the defendant concedes that his claim was not preserved at trial, we review it, nonetheless, pursuant to his request for review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). He is entitled to such review because any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right and would therefore necessarily meet the four prongs of *Golding*. See id., 239–40.

[3] The defendant makes several arguments regarding how the court must have drawn certain inferences, the overall deficiencies in the evidence and the speculative nature of inferences that the court *may* have drawn. Pursuant to well settled precedent, we review his argument only to the extent that he challenges the sufficiency of the evidence to support the direct and inferential facts actually found.

doorknob and that he discovered a doorknob on the floor of the apartment.

Officer Jason Minardi of the New Haven police department testified that when he arrived at the defendant's apartment on July 28, 2005, the defendant kept saying: "I did it. I did it, but it wasn't on purpose." Minardi also testified that after he secured the scene, he heard the defendant say that the defendant had used a knife to open the door and that when the defendant turned, the victim lunged at him and the defendant stabbed the victim. Minardi further testified that the defendant told police officers that the knife was in the room but that the defendant did not know the exact location.

Detective Donald Harrison testified that he interviewed the defendant at the New Haven police department following the incident. Harrison testified that the defendant waived his *Miranda* rights[4] and gave a statement, recorded on an audiotape, concerning the stabbing of the victim. Harrison testified that the defendant appeared nervous but that "everybody normally that comes up [to be interviewed] is nervous."

The defendant made his statement concerning his altercation with the victim between 9:20 and 9:32 p.m. on July 28, 2005. The defendant's statement was entered into evidence. In his statement, the defendant admitted that he had ingested a "bag" of heroin at 2 p.m. that day but that he understood everything that was happening and that his mind was clear.[5] The defendant stated that he rented apartment 10 at 73 Whitney Avenue in New Haven and that the victim and Esposito also lived in the apartment.

---

[4] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] The defendant also reiterated that he had understood his rights pursuant to *Miranda* and signed a waiver of his rights prior to the interview and statement.

In his statement, the defendant first recounted the following story. On July 28, 2005, he was standing at the door of his apartment with the knife in his hand, trying to unlock the door from the inside with the knife. The defendant turned to the victim and said, "let me have your key." The victim was reluctant to turn over the key, and the defendant turned toward the victim. The victim lunged toward the defendant, then retreated. The defendant and the victim continued talking, until "all of a sudden [the victim] noticed the blood, [the defendant] noticed the blood and [the victim] said to [the defendant], 'call an ambulance.'" The victim became faint and the defendant helped him lie down on the floor. The victim called out to Esposito for something to help stop the bleeding. The defendant applied a towel to the victim's knife wound and applied pressure while talking to the victim and reassuring him that an ambulance was on the way. The defendant stated that when the victim lunged at him, the knife entered the victim's chest.

Upon further questioning, the defendant stated that when he arrived home at approximately 7 p.m., he had an argument with the victim. The defendant was attempting to collect money for rent, and the victim said that he was "doing [his] best" to pay the rent. The argument lasted for less than one minute. After "ten minutes, maybe," the defendant used a knife to try to open the door to leave[6] because the doorknob was broken and sometimes a knife[7] was needed to release the lock mechanism from the inside. After the defendant had opened the door, he was standing there holding the knife and the victim lunged at him. The defendant stated that he "flinched and that's when it happened,

---

[6] The defendant stated that he was in and out of the apartment because he was making soup.

[7] The defendant stated that the three men used a kitchen knife with a serrated blade and a black handle to unlock the door.

that's when it happened." The defendant stated again that neither he nor the victim realized that the victim had been stabbed until minutes later when the victim noticed that he was bleeding.

After additional questioning, the defendant stated that he was holding the knife "like a drumstick"[8] up by his chest. The defendant stated that he moved back because the victim lunged and that's when "the knife— you know was—he got stabbed."[9] He repeated that they did not know that the victim was stabbed but that the defendant then dropped his hand because he "thought [the victim] was, you know, going to hit [the defendant] and when [the victim] didn't, [the defendant] just relaxed then . . . ." The defendant stated that he was going to leave through the door, but then the victim noticed that he was bleeding. The defendant again stated that he had Esposito hand him a towel and that he put pressure on the victim's chest and told the victim to relax and that an ambulance was on the way. The defendant also stated that the victim did not have any weapons on his person and that he did not mean to stab the victim, he was very sorry that it happened and that it was "totally an accident." Finally, the defendant stated that he "didn't even feel anything, you know, I didn't feel him, you know, on—on the knife or any—I didn't feel no pressure, anything you know what I mean." The defendant admitted, however, that he was the only one holding the knife.

Peter Barrett, a physician and an assistant professor of surgery and the director of the adult cardiothoracic

---

[8] The defendant demonstrated his hold on the knife for the officers, and the officers demonstrated it for the court. In court, Harrison testified that the defendant was holding the knife "like a chicken drumstick. I didn't mean a banging drumstick, like a chicken drumstick or a turkey drumstick."

[9] The defendant stated that he thought that the knife entered the left side of the victim's chest, underneath his heart.

intensive care unit of Yale University School of Medicine and Yale-New Haven Hospital, testified that he treated the victim on July 28, 2005. On that date, the trauma service requested that Barrett assist in the victim's care. Barrett testified that the victim had suffered a laceration to his heart's right ventricle that was bleeding profusely and that the trauma service was having difficulty controlling the bleeding. Barrett testified that the puncture wound actually penetrated the thin wall of the right ventricle but did not appear to cause any damage to the internal structures of the heart. Additionally, Barrett testified that the medical team had to close the gap in the heart and perform multiple transfusions, both during and after the operation. Barrett testified that the knife had to enter into the victim's chest "on the order of three to four, maybe five inches" in order to penetrate the ventricle wall.

The victim testified that as of July 28, 2005, he had been sharing the apartment with the defendant for approximately two months.[10] The victim testified that the defendant slept in a bed, the victim slept on a couch he owned, and Esposito slept on the floor on some blankets and sleeping bags. The victim testified that he was approximately six feet tall and that the defendant was approximately five inches shorter. He also testified that the doorknob used to leave the apartment was loose, so that it would occasionally come off and the men would have to use a "filet knife" to release the mechanism. To do so, the men had to crouch down to the mechanism, which was approximately waist high, look into the mechanism[11] and guide the knife to the

---

[10] The victim testified that he kept his belongings in the apartment but only stayed there at most fifteen nights each month.

[11] The victim testified that the door could not be opened without a person being at eye level with the mechanism because "you need to catch that little part on the inside to open the door. You couldn't do it . . . blindly, but actually look into the cylinder, find a part and move it. So, you couldn't do it blindly, you had to see it."

right spot. The whole process usually took between fifteen and forty-five seconds.

The victim testified that he did not remember all of the events of July 28, 2005, because of his heart injury and the resulting coma, which he was in for eight to ten days after the injury. The victim testified that he and Esposito entered the apartment together and that he was preparing to go to sleep but that the defendant was asking both men for money for rent. The victim further testified that neither he nor Esposito would give the defendant money. The victim testified that he thought he had paid his share of the rent and that the defendant was asking him for money that he did not owe. The victim also testified that the defendant had to use heroin daily or he would be sick.

Furthermore, the victim testified that the defendant badgered him for more money, becoming increasingly loud as the argument continued. The victim testified that he was concerned that if the police were called by neighbors, he would be arrested, along with the defendant and Esposito, because of the drug paraphernalia in plain sight in the apartment. The victim testified that the defendant was getting louder, he moved within one foot of the victim and was yelling that he would search the victim's pockets for money and keep anything that he found because the victim owed him money. The victim testified that he tried to calm the defendant by talking to him. The victim also admitted that after approximately five to ten minutes of the defendant's yelling, the victim slapped the defendant's head with an open palm. The victim testified that the defendant fell but stood back up and continued screaming and yelling and that the victim slapped the defendant's head again with his hand.[12] The victim testified that the defen-

[12] During his statement, the defendant never informed the police that the victim had struck him twice during the course of their argument.

dant became even more upset, yelling that "he couldn't believe I hit him, nobody hits me, nobody hits me and gets away with it. You are going to learn the hard way, nobody can hit me, nobody can get away with it. Who do you think you are?" The victim added that the defendant was "[b]asically just threatening [him], threatening, threatening, threatening. At [that] point, he was just threatening over and over and over again." The victim further testified that he went to lie down on his couch to attempt to get some sleep, while the defendant continued to yell threats at him. Finally, the victim testified that the last thing he remembered was thinking, "what are you going to do, keep me awake all night?"

The defendant essentially asks us to retry the evidence before the court. We cannot do so. The standard of review employed in a claim of insufficient evidence is well settled. "[W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the [evidence] so construed . . . the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require [an appellate] court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Barretta*, 82 Conn. App. 684, 687–88, 846 A.2d 946, cert. denied, 270 Conn. 905, 853 A.2d 522 (2004).

We note that "the [finder of fact] must find every element proven beyond a reasonable doubt in order to

find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [fact finder] to conclude that a basic fact or an inferred fact is true, the [fact finder] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Santos*, 104 Conn. App. 599, 611–12, 935 A.2d 212 (2007), cert. denied, 286 Conn. 901, 943 A.2d 1103, cert. denied,

555 U.S. 851, 129 S. Ct. 109, 172 L. Ed. 2d 87 (2008), quoting *State* v. *Ledbetter*, 275 Conn. 534, 542–43, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

Our analysis begins with the statute. To prove reckless assault in the second degree, the state must prove beyond a reasonable doubt that the defendant "recklessly cause[d] serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ." General Statutes § 53a-60 (a) (3). "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ." General Statutes § 53a-3 (13). "Thus, the [fact finder] [has] to consider objectively the nature and degree of the risk and the [defendant's] subjective awareness of that risk. Subjective realization of a risk may be inferred from a person's words and conduct when viewed in the light of the surrounding circumstances." (Internal quotation marks omitted.) *In re Jeremy M.*, 100 Conn. App. 436, 448, 918 A.2d 944, cert. denied, 282 Conn. 927, 926 A.2d 666 (2007).

"Recklessness involves a subjective realization of that risk and a conscious decision to ignore it. . . . It does not involve intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result." (Internal quotation marks omitted.) *State* v. *Jones*, 289 Conn. 742, 756, 961 A.2d 322 (2008). "Recognizing the difficulty in proving by direct evidence that an accused subjectively realized and chose to ignore a substantial risk . . . [our Supreme Court has] long held that the state of mind

amounting to recklessness . . . may be inferred from conduct." (Internal quotation marks omitted.) *State* v. *McMahon*, 257 Conn. 544, 568–69, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002).

The defendant's challenge to the sufficiency of the evidence against him is limited to the proof of his mental state, i.e., whether he acted recklessly. Considering all of the evidence admitted and the reasonable inferences that could be drawn therefrom, there was sufficient evidence that the defendant acted recklessly in causing the victim's injuries. There was evidence that the defendant firmly held a knife that was pointed toward the victim and level with the victim's heart as they engaged in a verbal and physical argument. Although the defendant argues that there is no direct evidence to that effect because he denied holding the knife like that *during the argument*, the court was free to credit (1) the victim's testimony about an ongoing physical and verbal confrontation, including the defendant's continuing threats of violence, (2) Barrett's testimony about the placement and severity of the injury, including his testimony that the knife entered the victim's chest between three and five inches deep, piercing the victim's heart, (3) the defendant's admissions about how he was holding the knife when it entered the victim's body, (4) the defendant's admission that he was holding the knife as the victim moved toward him and that at that time, he "thought [the victim] was, you know, going to hit [the defendant]," and (5) the defendant's admission that when the victim moved toward him, the defendant "flinched and that's when it happened, that's when it happened." The court, as the trier of fact and sole arbiter of credibility, had the responsibility of reconciling the conflicting evidence and reasonably could infer that the defendant held the knife in such a manner during the altercation despite his realization of the risk

that it entailed and that the defendant made a conscious decision to ignore that risk. See *State* v. *Jones*, supra, 289 Conn. 756. Despite the defendant's presentation of evidence that could support a reasonable hypothesis of innocence, we cannot conclude that no reasonable view of the evidence exists that supports the court's findings. Accordingly, in the present case, considering the evidence in the light most favorable to sustaining the court's finding of guilt, we conclude that the court properly found the defendant guilty of reckless assault in the second degree under § 53a-60 (a) (3).

## II

The defendant also claims that his conviction on the charge of reckless assault in the second degree under § 53a-60 (a) (3), following his acquittal on the charge of intentional assault in the first degree § 53a-59 (a) (1), violated his right against double jeopardy under the fifth amendment to the United States constitution.[13] We disagree.

The following facts and procedural history are relevant to our resolution of this claim. On October 4, 2006, the defendant moved for a judgment of acquittal[14] on the second count on the ground of insufficient evidence and requested that the court "vacate its finding of guilt on the assault first charge and . . . enter any new judgment as to any lesser included offense that is supported by the evidence." On October 31, 2006, the court heard

---

[13] The defendant also cites in his brief the due process clause of the Connecticut constitution, found in article first, § 9. We decline to review separately his claim under the Connecticut constitution, however, because he does not provide any further analysis pursuant to *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992). See, e.g., *State* v. *Colon*, 272 Conn. 106, 154 n.26, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); *In re Candids E.*, 111 Conn. App. 210, 211 n.2, 958 A.2d 229 (2008).

[14] Although the defendant's motion appears to be untimely; see Practice Book § 42-52; the state concedes that it did not object on this basis.

argument on the defendant's motion. The defendant argued that there was insufficient evidence that he evinced an extreme indifference to human life. Additionally, the defendant argued that although "there [was] probably enough evidence to find that [the defendant] in fact may have acted recklessly . . . [i]t was more negligence than reckless."

Following argument, the court stated: "Counsel, I have to tell you that I've been troubled by this case since I decided it. . . . [A]nd what is troubling me the most is . . . I came to the conclusion that there was an altercation between these two individuals, and during the course of that altercation, [the victim] suffered this stab wound. What I don't know . . . was what were the mechanisms of this injury. . . . What were these two people doing with respect to each other that resulted in that knife finding its way into [the victim's] body? There was no evidence of that. I feel comfortable with the finding that there was recklessness involved. I do not feel comfortable with my finding that [the defendant] exhibited extreme indifference to human life because I just don't know the mechanisms of what happened; there was [a] dearth of evidence in that regard. . . . So, at this point, I think that I have come to the conclusion, after giving this much thought, that there was not enough evidence that there was extreme indifference to human life."[15]

---

[15] We note that the defendant makes much of this statement in his challenge to the sufficiency of the evidence. See part I. Knowledge of the exact mechanism of the victim's injury, however, was not required for a finding of guilt. The state need only prove that the defendant *recklessly* caused serious physical injury to another person by means of a deadly weapon or a dangerous instrument. In light of (1) the court's continued confidence in its finding of recklessness, (2) the defendant's challenge to only the element of recklessness, (3) our conclusion that there was sufficient evidence to support the court's finding of recklessness and (4) the court's reversal of its earlier finding of extreme indifference to human life, we need not further consider the court's statement. See *State* v. *Santos*, supra, 104 Conn. App. 616 n.17 ("[w]e do not import a lack of confidence in the court's statement that it struggled with its decision in rendering its finding of guilt as there is an

The court then inquired as to the appropriate lesser included offenses. The court asked the parties whether reckless assault in the second degree in violation of § 53a-60 (a) (3) is a lesser included offense of reckless assault in the first degree in violation of § 53a-59 (a) (3). The state responded that it might not be a lesser included offense because § 53a-60 (a) (3) requires the use of a deadly weapon or dangerous instrument. The state suggested, however, that in the original information, the defendant also was charged with § 53a-59 (a) (1), of which § 53a-60 (a) (3) is a lesser included offense. Defense counsel argued that § 53a-60 (a) (3) was not a lesser included offense of either § 53a-59 (a) (1) or (3) but that she believed that § 53a-61 (a) (3) was a lesser included offense of § 53a-59 (a) (3). The court reminded counsel that § 53a-61 (a) (3) also requires the use of a deadly weapon or dangerous instrument but suggested that reckless assault in the third degree in violation of § 53a-61 (a) (2) was clearly a lesser included offense of § 53a-59 (a) (3). At that point, defense counsel requested that the court consider § 53a-61 (a) (2) as a lesser included offense. The court again inquired as to whether § 53a-60 (a) (3) could be a lesser included offense of § 53a-59 (a) (1) and asked counsel to prepare a response.

At the conclusion of the hearing on October 31, 2006, the following exchange occurred:

"The Court: Okay. So, what I have now before me is the defendant agreeing with what I have said as far as lessers included, the state disagreeing, but the defense requesting that the motion for a judgment of acquittal be granted with respect to count two of the information, and that the conviction be entered on count—on the lesser included of assault in the third degree.

equal inference that the court merely was reflecting on the gravity of its role as the trier of fact" [citation omitted]).

"[Defense Counsel]: Yes, Your Honor.

"The Court: Which is recklessly causes serious physical injury to another person.

"[Defense Counsel]: Yes, Your Honor.

"[The Prosecutor]: Well, I'm not quite sure that is what happened here. Counsel in her motion said that she requested the court to vacate its finding of guilty of assault in the first degree and enter any new judgment that is supported by the evidence, however that plays out.

"The Court: I'm just stating what the defendant is requesting at this point. Because, clearly, if assault in the second degree [§ 53a-60 (a) (3)] is a lesser, given what I have just said, as far as what I find proven and what I find not proven, that would be the appropriate lesser included charge.

"[The Prosecutor]: Uh-huh.

"The Court: But if it's not a lesser included, then the appropriate lesser included would be assault in the third degree.

"[The Prosecutor]: Uh-huh.

"The Court: So, we have to answer that question.

"[The Prosecutor]: Right."

Defense counsel raised no objection to the court's inquiry or its characterization of her argument.

On November 28, 2006, the court again heard argument on the defendant's motion for a judgment of acquittal. The state argued that § 53a-60 (a) (3) is a lesser included offense of § 53a-59 (a) (1), the first count of the information. The state did not request consideration of any lesser included offense with respect to the second count of the information. The defendant argued

that § 53a-60 (a) (3) is a lesser included offense of § 53a-59 (a) (1) but that § 53a-61 (a) (3) would be more appropriate given the facts of the case. *The defendant requested that the court consider § 53a-61 (a) (3) as a lesser included offense under the first count.* Additionally, defense counsel stated that she was not requesting any lesser included offenses under the second count.[16]

The court rendered judgment of acquittal as to the second count of the information because of insufficient

[16] The following colloquy occurred between defense counsel and the court:

"[Defense Counsel]: Your Honor, after doing research also on this issue, I believe that the state of [the] law in Connecticut is that assault in the second degree, reckless is a lesser of intentional assault—assault in the first degree, at least under the subsections we're talking about. Although I don't think the cases are directly on point with the issue that we have presented, I think the decisions that the court has come down with indicate that this is, in fact, a lesser included offense. I will note, Your Honor, that I also asked at the time of argument that Your Honor consider the negligence section, assault in the third degree, which also would be a lesser offense included within assault in the first degree.

"The Court: Under the first count?

"[Defense Counsel]: Under the first count, Your Honor, which is what I requested, I believe, during argument at the time.

"The Court: But, of course, [counsel], if assault in the second degree under the reckless (a) (3) [sub]section is a lesser included on the first count of the information, we wouldn't get to assault in the third degree, would we?

"[Defense Counsel]: Only if Your Honor found that it wasn't reckless conduct.

"The Court: Only if he was found not guilty of that lesser included?

"[Defense Counsel]: Not guilty of that, correct.

"The Court: And I have already found reckless conduct in the memorandum of decision?

"[Defense Counsel]: Correct.

"The Court: All right.

"[Defense Counsel]: That's correct, Your Honor.

"The Court: Okay.

"[Defense Counsel]: So, I believe the state of the law is correct, as [the prosecutor] stated, that it is, in fact, a lesser of assault in the first degree.

"The Court: Okay. Is the defendant requesting any lesser included charges with respect to the second count of the information?

"[Defense Counsel]: No, Your Honor.

"The Court: And to the extent that those have been requested in the past?

"[Defense Counsel]: We will be withdrawing that."

evidence. The court also found the defendant guilty of reckless assault in the second degree in violation of § 53a-60 (a) (3), a lesser included offense of the first count of intentional assault in the first degree in violation of § 53a-59 (a) (1).

The defendant timely appealed, raising only the issue of insufficient evidence considered in part I. Following oral argument, the court ordered the parties to file simultaneous supplemental briefs addressing the following questions: "(1) When a defendant is acquitted on a particular count, can the trial court open the judgment of acquittal and find the defendant guilty of a lesser offense included within that charge? (2) Is the answer to the previous question the same if the defendant acquiesces to this procedure?"

The double jeopardy clause embodies two related protections. It serves as protection "against 'being subjected to the hazards of trial and possible conviction more than once for an alleged offense,' *Green* v. *United States*, 355 U.S. 184, 187, 78 S. Ct. 221, 223, 2 L. Ed. 2d 199 (1957), and protection 'against multiple punishments for the same offense.' *United States* v. *Wilson*, 420 U.S. 332, 342–43, 95 S. Ct. 1013, 1021, 43 L. Ed. 2d 232 (1975) (quoting *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 [1969]); see also *United States* v. *DiFrancesco*, 449 U.S. 117, 128–29, 101 S. Ct. 426, 432–33, 66 L. Ed. 2d 328 (1980)." *Paul* v. *Henderson*, 698 F.2d 589, 591 (2d Cir.), cert. denied, 464 U.S. 835, 104 S. Ct. 120, 78 L. Ed. 2d 118 (1983).

First, we consider whether the court's actions in this case violated the defendant's right against double jeopardy. Under the circumstances of this case, we must ask whether a court may properly render a judgment of guilty as to assault in the second degree in violation of § 53a-60 (a) (3), a lesser included offense of assault

in the first degree in violation of § 53a-59 (a) (1), after granting a defendant's motion for a judgment of acquittal as to § 53a-59 (a) (1) in conjunction with a finding of guilt as to the alternative charge of assault in the first degree in violation of § 53a-59 (a) (3).

First, we note that the court's characterization of its disposition of the first count as an acquittal is not dispositive. An appellate court "must make its own inquiry into the trial court's disposition to determine, for double jeopardy purposes, whether the court 'acquitted' the defendant . . . ." *State* v. *Paolella*, 210 Conn. 110, 122, 554 A.2d 702 (1989), citing *United States* v. *Scott*, 437 U.S. 82, 96, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978). Accordingly, we must look to the context in which the motion for a judgment of acquittal was granted.

We find instructive the section of the rules of practice concerning general principles of motions for a judgment of acquittal. Practice Book § 42-40 provides in relevant part: "After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon its own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty. *Such judgment of acquittal shall not apply to any lesser included offense for which the evidence would reasonably permit a finding of guilty.*" (Emphasis added.)

We also find the "acquittal first" rule helpful to our analysis. Our Supreme Court has held that "[o]nly after it has confronted and unanimously completed the difficult task of deciding the guilt or innocence of the accused as to the charged offense should the [fact finder] consider lesser included offenses. Anything less dilutes the right of the state and the defendant to have the [trier of fact] give its undivided attention and most

serious deliberations to the offense with which the defendant is charged and flies in the face of the unanimity requirement of [*State* v. *Aparo*, 223 Conn. 384, 614 A.2d 401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 1415, 122 L. Ed. 2d 785 (1993)] and [*State* v. *Daniels*, 207 Conn. 374, 542 A.2d 306 (1988)]." *State* v. *Sawyer*, 227 Conn. 566, 583, 630 A.2d 1064 (1993). Thus, after the court, as the fact finder, found the defendant guilty of the greater offense, it would not have reached the lesser included offenses. In this case, the court acquitted the defendant of the first count of assault in the first degree but found him guilty of the second, *alternative*, count of assault in the first degree. Accordingly, the court could not have reached the lesser included offenses of either count. We are not certain that under these limited circumstances, the court's subsequent consideration of the lesser included offenses under either count violates the constitution's prohibition of double jeopardy.[17]

We need not resolve this question, however, because we conclude that the defendant has not preserved the issue and is not entitled to prevail on review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[18] See *Moore* v. *McNamara*, 201 Conn. 16,

---

[17] We note that the court's initial finding of guilt as to count two precluded the court from proceeding to consider the lesser included offenses under both counts. The *defendant's* successful motion for a judgment of acquittal as to reckless assault in the first degree assault charged in count two may have then required the court to proceed to the lesser included offenses of each count as it would have had to do when making its initial determination. See *State* v. *Greene*, 274 Conn. 134, 160–62, 874 A.2d 750 (2005) (modifying judgment of conviction after reversal when record establishes fact finder found beyond a reasonable doubt all essential elements of lesser included offense), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006).

[18] The defendant requested *Golding* review in his supplemental brief. He also requested review pursuant to the plain error doctrine. Because we find that the defendant waived his protection against double jeopardy, we must also conclude that he is not entitled to plain error review. See *State* v. *Velez*, 113 Conn. App. 347, 361 n.8, 966 A.2d 743, cert. denied, 291 Conn. 917, 970 A.2d 729 (2009).

20, 513 A.2d 660 (1986) ("basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case").

As an initial matter, we note that there are two lines of cases involving principles of double jeopardy and the applicability and availability of *Golding* review. The first involves double jeopardy claims arising in the course of a single trial and allows for *Golding* review. See, e.g., *State* v. *Brooks*, 88 Conn. App. 204, 214–17, 868 A.2d 778, cert. denied, 273 Conn. 933, 873 A.2d 1001 (2005); *State* v. *Nixon*, 32 Conn. App. 224, 235, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995). The second line of cases involves double jeopardy claims arising out of the trial of a defendant who has a double jeopardy claim that arises from a prior proceeding and generally prevents a determination of an unpreserved claim on the merits. See, e.g., *State* v. *Almeda*, 211 Conn. 441, 448, 560 A.2d 389 (1989); *State* v. *Price*, 208 Conn. 387, 390–92, 544 A.2d 184 (1988); see also *Harris* v. *United States*, 237 F.2d 274, 277 (8th Cir. 1956) ("[e]ven if the plea of double jeopardy might have been successfully pleaded in this case it is a personal defense and may be waived by the accused").[19] We believe that this case is more analogous to the latter and that the defendant forfeited his double jeopardy claim by the failure to timely assert his rights at any time prior to the court's judgment on November 28, 2006. Cf. *State* v. *Price*, supra, 390 (implied waiver of double jeopardy claim

---

[19] We note that the right against double jeopardy may be waived by silence or by the actions of counsel and need not be knowing, intelligent and voluntary or expressly made. See *State* v. *Jones*, 166 Conn. 620, 630, 353 A.2d 764 (1974); see also *United States* v. *Broce*, 488 U.S. 563, 573–74, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) (explicit waiver not necessary with respect to double jeopardy defense relinquished by guilty plea); cf. *State* v. *Gore*, 288 Conn. 770, 777, 955 A.2d 1 (2008) ("defendant personally must waive the fundamental right to a jury trial"); *State* v. *Frye*, 224 Conn. 253, 260, 617 A.2d 1382 (1992) ("[w]aiver of the right to counsel will not be presumed or inferred from a silent record").

when defendant "proceeded to trial, verdict and judgment without raising [a double jeopardy] claim" arising from dismissal of unsworn jury and delay of trial [internal quotation marks omitted]).

Even if we assume arguendo that the defendant did not implicitly waive his double jeopardy claim simply by participating in the challenged proceeding and proceeding to appeal without raising a double jeopardy claim, we conclude that he expressly waived it, and, thus, his claim fails to satisfy the third prong of *Golding*. Under *Golding*, a defendant "can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Brewer*, 283 Conn. 352, 358, 927 A.2d 825 (2007).

The defendant has met the first two prongs of *Golding*; he has provided complete transcripts of the trial proceedings and has claimed a violation of his right against double jeopardy. His claim, however, fails to satisfy the third prong of *Golding* because he waived his right against double jeopardy so that no violation of his constitutional rights clearly exists.

"The most basic rights of criminal defendants are . . . subject to waiver. See, e.g., *United States* v. *Gagnon*, [470 U.S. 522, 528–29, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985)] (absence of objection constitutes waiver

of right to be present at all stages of criminal trial); *Levine* v. *United States*, [362 U.S. 610, 619, 80 S. Ct. 1038, 4 L. Ed. 2d 989 (1960)] (failure to object to closing of courtroom is waiver of right to public trial); *Segurola* v. *United States*, [275 U.S. 106, 111, 48 S. Ct. 77, 72 L. Ed. 186 (1927)] (failure to object constitutes waiver of fourth amendment right against unlawful search and seizure); *United States* v. *Figueroa*, 818 F.2d 1020, 1025 [1st Cir. 1987] (failure to object results in forfeiture of claim of unlawful postarrest delay); *United States* v. *Bascaro*, 742 F.2d 1335, 1365 [11th Cir. 1984] (absence of objection is waiver of double jeopardy defense), cert. denied sub nom. *Hobson* v. *United States*, [472 U.S. 1017, 105 S. Ct. 3476, 87 L. Ed. 2d 613 (1985)]; *United States* v. *Coleman*, 707 F.2d 374, 376 [9th Cir.] (failure to object constitutes waiver of fifth amendment claim), cert. denied, [464 U.S. 854, 104 S. Ct. 171, 78 L. Ed. 2d 154 (1983)]. See generally *Yakus* v. *United States*, [321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944)] ([n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right)." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 240 Conn. 317, 325, 692 A.2d 713 (1997).

The defendant maintains that he "remained focused on lesser included offenses of count two, not count one." In addition, the defendant argues that it was "[o]nly at the last moment [that he withdrew] reckless [assault in the third degree] as a lesser included offense and acquiesce[d] to the court's finding [him] guilty of second degree reckless assault as a lesser included offense of count one."[20] The defendant requests that we exercise our discretion and decline to conclude that the defendant waived his claim.

---

[20] We note that it is not clear that the defendant withdrew his request for the lesser included offense of reckless assault in the third degree in violation of § 53a-61 (a) (2). Our review of the record reveals that the defendant

During the October 31, 2006 hearing on his postverdict motion for a judgment of acquittal, the defendant expressly requested that the court consider the lesser included offense of reckless assault in the third degree under the first count. The court conducted a detailed discussion of proper lesser included offenses on October 31, 2006, and afforded the parties time to research the issues and return for further proceedings. Subsequently, on November 28, 2006, the defendant agreed that reckless assault in the second degree pursuant to § 53a-60 (a) (3) was a proper lesser included offense of the first count but requested that the court consider a different lesser included offense under count one, criminally negligent assault in the third degree under § 53a-61 (a) (3). Although he was successful only in having his conviction of assault in the first degree reduced to the lesser included offense of assault in the second degree, we must conclude that to allow the defendant to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error and then to ambush the state with that claim on appeal. See *State* v. *Fabricatore*, 281 Conn. 469, 480–81, 915 A.2d 872 (2007). Under these facts, we simply cannot conclude that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 240.

The judgment is affirmed.

In this opinion the other judges concurred.

---

instead simply agreed with the court that it must first acquit him of reckless assault in the second degree in violation of § 53a-60 (a) (3) before considering assault in the third degree. See *State* v. *Sawyer*, supra, 227 Conn. 583 (acquittal first rule).